|  UNITED STATES DISTRICT COURT  |
|  DISTRICT OF PUERTO RICO  |

| | |
|---|---|
| PUERTO RICAN ASSOCIATION OF PHYSICAL MEDICINE AND REHABILITATION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Civil No. 07-1034 (JAF) |

**OPINION AND ORDER**

This dispute involves a federal administrative rule prohibiting Medicare reimbursement for physical therapy incident to physician's services provided by someone other than physical and occupational therapists who have graduated from an approved "physical therapy curriculum," or who have "2 years of appropriate experience as a physical therapist, and has achieved a satisfactory grade on a proficiency examination" ("the new rule"). 42 C.F.R. 410.59 (authorizing Medicare payment for physical therapy provided only if the administering physical therapist meets qualifications outlined in 42 C.F.R. § 484.4). Implementation of the new rule began in 2005.

Plaintiffs are the Puerto Rican Association of Physical Medicine and Rehabilitation (PRAPMR); María Palous, M.D.; Laura Plaza, M.D.; Miguel Cardona, M.D.; and patients whose physical therapy options are limited under the rule. Defendants are the United States, the U.S.

Department of Health and Human Services, Centers for Medicare and Medicaid Services, and Triple S of Puerto Rico. Essentially, Plaintiffs complain that Defendants' implementation of the new rule violates, inter alia, the Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4541(b), 111 Stat. 251, 456, the Due Process Clause of the U.S. Constitution, U.S. CONST. AMEND. XIV, § 1, and the Equal Protection Clause of the U.S. Constitution, U.S. CONST. AMEND. XIV, § 1, and request permanent injunctive and declaratory relief. In the meantime, they have requested a temporary order enjoining Defendants' implementation of the new rule during the pendency of this litigation. Docket Document No. 1-1. Defendants have opposed the preliminary injunction and simultaneously moved to dismiss the entire complaint. Docket Document No. 17-1. Plaintiffs oppose the motion to dismiss, Docket Document No. 33, Defendants reply, Docket Document No. 36, and Plaintiffs sur-reply. Docket Document No. 39.

Congress created the Medicare program in 1965 to establish a federally-funded system of health insurance benefits for the aged and disabled. La Casa Del Convaleciente v. Sullivan, 965 F.2d 1175, 1176 (1st Cir. 1992). Medicare is divided into two major components. Under Part A of the program, Medicare provides insurance for the costs of hospitalization and post-hospitalization care. Id. This case involves the second component of Medicare, Part B, which is a federally subsidized, voluntary insurance program that covers a percentage (typically eighty percent) of the reasonable charges for

physician and laboratory services and certain medical supplies and equipment. Id.

Medicare Part B provides coverage for "medical and other health services" that are defined as "physicians' services . . . furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills." 42 U.S.C. § 1395x(s)(1),(2); see also 42 C.F.R. § 410.26. In the past, under this "incident to" provision, it appears that physicians were able to bill Medicare for qualifying physical therapy provided either directly by the physician or by qualified, supervised "auxiliary personnel." See 42 C.F.R. § 410.26(b)(6).

Then, in 1997, the seeds of the instant dispute were sown when Congress amended the Medicare statute in the Balanced Budget Amendment of 1997 to clarify that no Medicare reimbursement would be made "for any expenses incurred for items or services" relating to

> outpatient occupational therapy services or outpatient physical therapy services furnished as an incident to a physician's professional services . . . *that do not meet the standards and conditions* (other than any licensing requirement specified by the Secretary) *under the second sentence of [42 U.S.C. § 1395x(p)]* . . . as such standards and conditions would apply to such therapy services if furnished by a therapist.

42 U.S.C. § 1395y(a)(20)(emphasis added); see Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4541(b), 111 Stat. 251, 456. The second

sentence of § 1395x(p) authorizes the Secretary of Health and Human Services to impose standards and conditions for outpatient physical therapy. The Balanced Budget Amendment of 1997 therefore made clear that Medicare would not compensate for outpatient physical therapy services provided "incident to" physician services unless they met standards established by the Secretary.

Acting pursuant to the authority vested in him by the Balanced Budget Amendment of 1997 to create standards for when outpatient physical therapy services qualified for reimbursement, the Secretary issued the new rule, which took effect in June 2005, stating that Medicare would pay for outpatient physical therapy services that are provided "incident to" a physician's professional services only if those therapy services are provided by someone who meets the qualifications set forth in 42 C.F.R. § 484.4. 42 C.F.R. § 410.59(a). Section 484.4, in turn, defines a qualified provider of outpatient physical therapy services to be an individual who has graduated from an approved "physical therapy curriculum," or who has "2 years of appropriate experience as a physical therapist, and has achieved a satisfactory grade on a proficiency examination." 42 C.F.R. § 484.4.

Dissatisfied with the new rule, and thinking that it (1) created a monopoly in favor of physical and occupational therapists, (2) inflicted economic and professional damages upon physicians and those they employ to perform physical therapy under their direction, and (3) exceeded the authority Congress intended to give the

Secretary to limit the kinds of physical therapy eligible for Medicare reimbursement in the Balanced Budget Act of 1997, Plaintiffs sent a letter to CMS, which is the federal agency in charge of the Medicare program and which published the rule in question, in March 2006 in which they asked that the new rule be revised. On July 11, 2006, CMS denied Plaintiffs' request, writing that Plaintiffs' "'Administrative Appeal' has no legal bearing on CMS and we can only advise you . . . to pursue whatever other administrative processes are available to you in an attempt to have this statute overturned." Docket Document No. 1-2.

Defendants now argue that the "other administrative processes" that CMS was referring to in its letter to Plaintiffs are the administrative processes used to challenge most Medicare benefit denials. Docket Document No. 16, 17. After the denial of a Medicare claim, the beneficiary or the physician may appeal the decision through a multi-step process of administrative review. 42 U.S.C. § 1395ff(a)(1); 42 C.F.R. § 405.801(b)(1). As part of the administrative review process, the plaintiff is entitled to a hearing before an administrative law judge ("ALJ"). 42 U.S.C. § 1935ff(d)(1)(A); 42 C.F.R. § 405.815. If the ALJ rules against the beneficiary or physician at the hearing, an appeal may be taken to the Medicare Appeals Council. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. §§ 405.904, 405.1100(a). The council can either affirm or remand the ALJ's determination. 42 C.F.R. § 405.1100(d). Only after exhausting the

administrative process can the beneficiary or the physician seek judicial review of the final decision in the district where he resides. 42 U.S.C. § 1395ff(b)(1)(A)(incorporating 42 U.S.C. § 405(g)). Defendants point out that in challenging the new rule, Plaintiffs have not exhausted any of the administrative remedies available to them, and have, instead, improperly leapfrogged directly to filing a claim in this court. Docket Document Nos. 16, 17. Defendants, therefore, argue that this court does not have jurisdiction over Plaintiffs' litigation, and that it must be dismissed. Id. Exhaustion of administrative remedies is a jurisdictional issue, and we must decide our jurisdiction before Plaintiffs' petition for a preliminary injunction. See Georgine v. Amchem Prods,. Inc., 83 F.3d 610, 623 n. 8 (3d Cir. 1996)(citing Carlough v. Amchem Prods., Inc., 10 F.3d 189 (3d Cir. 1993)).

Defendants point to a Fifth Circuit case, National Athletic Trainers' Association, Inc. v. United States Department of Health and Human Services ("NATA"), in support of their position, and we find it convincing. 455 F.3d 500 (5th Cir. 2006). In NATA, an athletic trainers' association challenged the exact same Medicare regulation at issue in the present case simply by filing a federal action, and the government moved to dismiss for plaintiff's failure to exhaust administrative remedies and, therefore, lack of subject matter jurisdiction. Id. at 503. The plaintiff trainers' association argued that it should not have to exhaust administrative remedies in order

to challenge the regulation in federal court because the administrative process was only available to patients or physicians seeking Medicare reimbursement for an actual claim. Id. The district court granted the government's motion, and the Fifth Circuit affirmed, holding that even though the plaintiff athletic trainers' association itself could not make a Medicare claim and then, if it were denied, pursue administrative review, physicians and patients "ha[d] administrative remedies available to them that have yet to be exhausted." Id. at 507.

The Fifth Circuit's reasoning in NATA applies with equal, if not stronger, force to punctuate the lack of subject matter jurisdiction in the present case. Whereas the athletic trainers' association was the only plaintiff in NATA, physicians and patients alike are among the captioned plaintiffs in the instant case such that they can easily make the claims for Medicare reimbursement implicating the contested regulation and pursue the administrative review of the expected denial, in order to establish the necessary subject matter jurisdiction for federal judicial review of the regulation's statutory and constitutional validity.

Plaintiffs first argue that it would be unfair to deny federal question jurisdiction in the present case because the government "provides no avenues for challenges to a regulation and its validity through the agency's processes." Docket Document No. 33-1. Plaintiffs argue that the administrative process referred to by

Defendants was created to attend to disputes regarding benefit coverage and payment denials *only*, but not regulation challenges. Id.  That is patently untrue. The NATA court provided an explicit example of how a physician seeking Medicare reimbursement for a non-qualified physical therapy provider could challenge the new rule: If the physician's petition for Medicare reimbursement is denied, the physician "can pursue administrative review and, if such a claim is denied, a physician could seek judicial review in federal court and the court would have jurisdiction to determine the validity of the regulation."  NATA, 455 F.3d at 504.

Plaintiffs next argue that even if federal jurisdiction over the challenge of the regulation is contingent on a plaintiff's exhaustion of administrative remedies, which we have just held it is, such requirement does not destroy jurisdiction in the present case because Plaintiffs, without ever having been denied a Medicare reimbursement claim under the new rule, filed an "Administrative Appeal" with the CMS, and received a letter back from CMS stating that Plaintiffs' novel method of seeking administrative review "has no legal bearing on CMS and we can only advise you . . . to pursue whatever other administrative processes are available to you in an attempt to have this statute overturned." Docket Document No. 33-1. This, according to Plaintiffs, satisfies whatever administrative prerequisites this court could claim the law requires for jurisdiction to attach in federal court. Id.  We disagree. Plaintiffs wishing to challenge

Civil No. 07-1034 (JAF)                                                                          -9-

a Medicare regulation must file a claim for benefits and proceed accordingly. 42 U.S.C. § 1395ff(b) (explaining the appeals process that any individual dissatisfied with any initial determination on a Medicare reimbursement claim should follow); 42 U.S.C. § 405(g) (explaining that any individual dissatisfied with the outcome of the appeals process may seek review in federal district court).

Plaintiffs' final argument is that their lawsuit may proceed for the simple fact that it implicates a federal question and this court has jurisdiction over federal questions pursuant to 28 U.S.C. § 1331. Docket Document No. 33-1. We disagree – 42 U.S.C. § 405(h) explicitly states that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 . . . to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

In accordance with the foregoing, we **GRANT** Defendants' motion to dismiss for lack of subject matter jurisdiction. Docket Document Nos. 16, 17-1. Given our lack of jurisdiction, and the consequent closure of this case, we cannot reach any other pending motion in this case, viz., Plaintiffs' request for preliminary injunctive relief. Docket Document No. 1.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 18th day of June, 2007.

                                        S/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U. S. District Judge